```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

  * * * * * * * * * * * * * * *
MEGAN C. KERRIGAN,              )  Civil Action
                                )  No. 24-CV-2671
          Plaintiff,            )
vs.                             )
                                )
DEPARTMENT OF JUSTICE, et al.   )  May  8, 2025
                                )  10:34 a.m.
          Defendant.            )  Washington, D.C.
  * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF PROCEEDING
BEFORE THE HONORABLE SPARKLE L. SOOKNANAN
UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES**:

FOR THE PLAINTIFF:
    LUKE PARKER IHNEN
    Assistant Federal Defender
    Federal Defender Services of Eastern Tennessee, Inc.
    Capital Habeas Unit
    South Gay Street, Suite 2400
    Knoxville, TN  37929
    (865) 637-7979
    luke_ihnen@fd.org

FOR THE DEFENSE:
    KIMBERLY STRATTON
    Assistant U.S. Attorney
    United States Attorney's Office
    for the District of Columbia
    601 D Street NW
    Washington, D.C.  20530
    (202) 417-4216
    kimberly.stratton@usdoj.gov

*This transcript is work product.  This transcript shall be considered null and void if the transcript is edited, cut/pasted, disassembled, screenshot, and/or distributed in any manner by any party without authorization of the signatory.*

Court Reporter: Elizabeth Davila, RPR, FCRR
               Official Court Reporter

       Proceedings reported by machine shorthand.
    Transcript produced by computer-aided transcription.

```
 1                      P R O C E E D I N G S
 2               THE COURTROOM DEPUTY:  Your Honor, we're on the
 3       record for Civil Case, 24-2671, Megan Kerrigan versus the
 4       Department of Justice, et al.
 5               Counsel, please approach and identify yourselves
 6       for the record.  We'll start with the plaintiff.
 7               MR. IHNEN:  Good morning, Your Honor.
 8       My name is Luke Ihnen.  I am with the Federal Public
 9       Defender's Office in the Eastern District of Tennessee, here
10       to represent the plaintiff.
11               THE COURT:  Good morning.
12               MS. STRATTON:  Good morning, Your Honor.
13       Kim Stratton representing the United States, the defendants
14       in this matter.
15               THE COURT:  Good morning.
16               All right.  Counsel, so I saw your joint status
17       report proposing a briefing schedule, and I just want to get
18       more from both of you about where we are and what the issues
19       are that can be resolved here.
20               Why don't I start with the plaintiff to hear what
21       your concerns are with the responses to the FOIA request.
22               MR. IHNEN:  Thank you, Your Honor.
23               There are two FOIA requests that are at issue
24       here; there is one to the FBI, and one to the ATF.
25               The ATF has never responded to our request
```

1    claiming the exemption that -- linked to an ongoing or
2    future criminal proceeding.
3            In conversation with the government, after filing
4    the complaint, I think the ATF has stood by that exemption.
5    We have provided additional documents to support our
6    contention that there are documents that we should be able
7    to -- that the ATF can disclose.
8            THE COURT:  Can you just walk me through what it
9    is you want from ATF.
10           MR. IHNEN:  Sure.
11           Maybe -- just to back up for a second.  I work in
12   the capital habeas unit of the Federal Public Defender's
13   Office, so we represent destitute clients from all over the
14   country.  Our client was convicted in 2007 and sentenced to
15   death in 2009.
16           Before the state brought charges -- so this is a
17   2254 case.
18           THE COURT:  Okay.
19           MR. IHNEN:  Before the state brought the capital
20   charges, the federal government had actually indicted my
21   client on gun, carjacking, and evading arrest charges.
22           As part of that federal indictment, ATF agents
23   signed and swore affidavits and actually conducted an
24   interview with my client.  Those are -- we actually have
25   those records; that was part of the state court record.  So

1   our FOIA request was, essentially, based on that information
2   to see what other documents relate to that initial
3   investigation.
4           The FBI document at issue -- so our client was
5   sentenced to death in 2009.  The following year, the FBI
6   interviewed one of the codefendants in this case, and that
7   was part of the limited disclosure that was provided by the
8   FBI in this case.  But there are some redactions that we
9   believe may contain exculpatory information.
10          The reason that's important in this case is
11  because my client was sentenced in 2009; the FBI interview
12  was in 2010.  And then, in 2018 -- so this is after his
13  direct appeal was affirmed.
14          After the postconviction petition was filed, the
15  state informed counsel at that time that their theory of the
16  case had changed.  One of the codefendants, essentially, had
17  changed the story and had -- the way that the story had
18  changed was my client was not actually implicated in the
19  death of the second victim.  So there were two victims in
20  this case.
21          So then the PC was ultimately affirmed, or denied,
22  in 2021, and we represent him in his capital habeas
23  proceeding.  That is the significance of that FBI document.
24          THE COURT:  So you got the document but it was
25  redacted and, in your view, impermissibly redacted.

1             MR. IHNEN:  Yes, ma'am.  There was, I think, five
2    or six pages.  There were -- the areas that are redacted
3    seems to indicate potential *Brady* material.  It could
4    implicate my client; I don't know what is actually under
5    there.  But we believe that -- based on the exceptions that
6    the government has claimed, that they haven't met their
7    burden --
8             THE COURT:  So what are the exemptions they're
9    claiming for the redactions on the FBI interview document?
10            MR. IHNEN:  So they claim (b)(6), (b)(7)(C), and
11   (b)(7)(E).
12            THE COURT:  Okay.  And so we're talking about five
13   or six pages in that document.
14            MR. IHNEN:  Yes, ma'am.
15            THE COURT:  And for the ATF document request, you
16   have gotten no documents.  And ATF is saying they can't
17   produce them because of ongoing or future law enforcement --
18            MR. IHNEN:  That is correct, Your Honor.  They
19   outright denied the request and, then, on appeal upheld the
20   denial; and they're claiming the (b)(7)(A) exemptions.
21            THE COURT:  (b)(7)(A), okay.  Do you know how many
22   documents we're talking about?
23            MR. IHNEN:  We have no idea.  Like I said, there
24   was a special agent that swore an affidavit for the initial
25   federal indictment.  And then we have -- I submitted to the

1    government, just as evidence of the ATF's involvement -- but
2    there was an interview conducted by ATF agents.  I gave an
3    excerpt of that to the government so they can be aware of
4    who was involved and the time period.
5                THE COURT:  Okay.  And what's the status of your
6    client's 2254 now?
7                MR. IHNEN:  It is pending at the district court
8    level.
9                We are -- and partly -- we file FOIA requests in a
10   lot of these cases to help streamline the discovery process,
11   and so that's sort of where we are in that case right now.
12               THE COURT:  Okay.  Thank you.
13               MR. IHNEN:  Thank you, Your Honor.
14               THE COURT:  All right.  Ms. Stratton, so tell
15   me -- I assume you have had conversations with FBI and ATF
16   about these documents, and conferred with plaintiff about
17   their view on the exemptions.
18               Are the agencies standing on those exemptions?
19               MS. STRATTON:  They are.  So for the ATF, they
20   are -- for the (7)(A) exemption, they're looking to the
21   pending 2254.  And they also notified me that there is a
22   state appeal that is pending; however, I wasn't provided the
23   case number.  I didn't have a chance to look it up this
24   morning, I apologize.
25               THE COURT:  That's okay.

1        So they're saying because the 2254 is pending and
2    there is a state appeal pending, they can't release those
3    documents?
4            MS. STRATTON:  Correct.  They're saying that the
5    only documents they could release would be the plaintiff's
6    own records for his criminal file which he already has.
7    Those are the only records that can be severed; everything
8    else would fall under (7)(A).
9            THE COURT:  Okay.  Is it the case that -- so they
10   are looking for those documents to use in the pending 2254.
11           MS. STRATTON:  I understand.
12           THE COURT:  Right.  So the government's position
13   is:  If there is a pending 2254, they can't release the
14   records until those proceedings are over, and they want
15   those records to use in those proceedings?
16           MS. STRATTON:  And I would also add that the
17   government's position is there is a prosecutorial office
18   that's connected to that 2254, and any *Brady* material or
19   discovery should be pursued through that office and with
20   that case and not through a FOIA exemption.
21           We had this road block where there is a criminal
22   proceeding pending and the FOIA office cannot release the
23   records.
24           THE COURT:  Right.  Because they can't make those
25   judgments, what they need to produce or not.

1           So the government's position is that they can get
2    these documents, they just need to ask for them in the
3    discovery in the 2254 and they're not going to release them
4    through FOIA?
5           MS. STRATTON:  Correct.
6           THE COURT:  Then talk to me about the FBI
7    redactions.
8           MS. STRATTON:  So for the pages, and there are
9    only a handful -- the FBI stands by the redactions.  They
10   are (b)(6) personnel records, names or files.  (b)(7)(C),
11   (b)(7)(E) those are the names of individuals -- whether
12   they're subjects, investigators, state police, or federal
13   police -- that fall within that exemption.
14          The Privacy Act (j)(2) is just the extra layer of
15   privacy protection for those individuals.
16          THE COURT:  So what is redacted?
17          Are we talking about individuals' names, law
18   enforcement individual names, witnesses?  What?
19          MS. STRATTON:  I think it's a combination of state
20   and federal investigators, and suspects or potential
21   targets.
22          THE COURT:  I see.  Okay.  Thank you.
23          Counsel for the plaintiff, can I have you back up
24   here.
25          So starting with the ATF records, have you asked

1      for this in discovery in the 2254?
2               MR. IHNEN:  We are in the process of filing our
3      discovery motion with the federal court; that's actually
4      due, I think, by the end of this month.
5               THE COURT:  You mentioned that this is sort of
6      your practice, of using the FOIA process to get these
7      documents for the 2254.  Why do that before asking for
8      discovery for the 2254?
9               The government is saying:  We're not going to do
10     this through FOIA.  There is a discovery process in the
11     pending case, and you should ask for the documents there.
12              MR. IHNEN:  I think that that is fair.
13              We have had experiences where judges have asked us
14     to -- they have actually stayed the 2254 proceedings
15     while -- so we can go through the FOIA to try to get the
16     documents another way.  I am counsel in a 2255 where
17     that's -- formally, a capital 2255; but that was the same
18     case.
19              So it's -- we don't know what's in the ATF
20     material.  All we have is what was provided to trial
21     counsel.  It seems to lend that there might be more
22     documents; but we don't actually know what else ATF was
23     doing, their other involvement in this case.
24              As far as the FBI disclosure --
25              THE COURT:  I'm sorry.  Can we stick with ATF.  I

1        will get back to the FBI.
2                MR. IHNEN:  Yes, ma'am.
3                THE COURT:  So on the ATF request, if you are
4        going to file discovery requests in the 2254 and potentially
5        get those documents as part of discovery in the case that
6        you are litigating, it seems premature to me to be briefing
7        whether you are entitled to those documents under FOIA.  You
8        haven't even sought -- I mean, it would be different if you
9        were coming to me saying you sought them in discovery and
10       you couldn't get them for some reason --
11               MR. IHNEN:  Right.
12               THE COURT:  -- so you need to take another route;
13       but to file an entirely different lawsuit under FOIA to get
14       documents that you may well be entitled to get in discovery
15       in the 2254 just seems odd to me.
16               MR. IHNEN:  I understand, Your Honor.  I think,
17       maybe, with the ATF request, it's a matter of timing.  So we
18       actually filed the initial request -- our office was
19       appointed in January of 2022 to this case; we filed that
20       request in March of 2022.  It was actually -- the first
21       request, we didn't get a response.
22               So then we filed a second request in June of 2023.
23       So just the nature, I think, of the administrative process
24       and the timing of the complaint, it's just --
25               THE COURT:  You figured you would file and see

1    what you can get before you litigate it.
2            MR. IHNEN:  Yes, Your Honor.  It just happens to
3    be --
4            THE COURT:  And now we're here almost two years --
5            MR. IHNEN:  -- coming up against the discovery
6    deadlines.
7            THE COURT:  Okay.  I think, on the ATF request --
8    if you are about to serve discovery, you should serve that
9    discovery.  Maybe you'll get those documents and you don't
10   need to brief here whether you are entitled to them in FOIA
11   when there is a pending 2254 where you are entitled to
12   discovery.
13           So let's talk about the FBI redactions.
14           I hear the government saying that they have
15   redacted names of investigators and suspects; law
16   enforcement-type decisions.  Why do you think those
17   exemptions are wrong?
18           MR. IHNEN:  So we certainly aren't trying to
19   disclose the identity of investigators or police officers,
20   or anything like that.
21           There were -- I think the nature of this case --
22   there were four codefendants.  My client was prosecuted on a
23   felony-murder theory, so they were never actually able to
24   tie specific acts to any of the defendants.  But my client
25   is the only one of the four that received a death sentence,

1  and there are some other issues at play there.
2           But the way that the FBI document reads seems to
3  implicate -- I don't want to say "implicate" -- it seems to
4  include information of at least one or two of the other
5  codefendants that could potentially go to our guilt-phase
6  claims.  Again, it could implicate my client, it could be
7  exculpatory; we just don't really know.  And so as far as --
8  the denials themselves, they were sort of the general
9  denials.
10          I know for claiming those exemptions, the
11 government has a burden, I think, that they haven't carried.
12 I think because of the nature of this case -- it was highly
13 publicized; there were over, I think, 300 news stories,
14 3,000 TV stories.  We feel like -- and the fact that it's a
15 capital case -- given the publicity, the fact that a lot of
16 this information is in the public domain; the fact that my
17 client is on death row, that -- even if there were privacy
18 interests in, say, the witnesses or targets, that the public
19 interest would outweigh that.
20          Then sort of corollary to that, if it is
21 exculpatory, if it is *Brady* material, that, obviously,
22 should have been disclosed.  I know FOIA is not the forum to
23 litigate *Brady*.  But I think, in this instance, it was a
24 request made for records, and we may have discovered a *Brady*
25 violation after the fact.  So that, I think, goes to the

1    weighing, not -- we're not seeking FOIA to vindicate a *Brady*
2    claim.  It goes to the weighing of what this Court must do.
3            THE COURT:  Here is what I am going to ask you
4    both to do.  I mean, you would agree with me that if the
5    redactions are to protect the identities of federal and
6    state law enforcement officers, you would not be briefing to
7    ask me to produce that information?
8            MR. IHNEN:  Absolutely.
9            THE COURT:  I want you to go back and figure out
10   how much of the redactions are for that purpose and -- it
11   sounds like there were general-like exemptions here.  I am
12   not sure how much you have talked about it, but I want you
13   to go back and figure that out.
14           I don't want briefing on redactions that may well
15   turn out to be redactions to protect the identity of law
16   enforcement officers.  And then figure out what is left.
17           What are the remaining redactions?
18           File something letting me know if there is still a
19   disagreement here.  If all of these redactions are for that
20   purpose, I am not sure what we're briefing.
21           On the ATF requests, we're going to defer briefing
22   on that.  I think you should file your discovery request in
23   the 2254; you may well get those documents.  And then if you
24   don't, you can let me know; and let me know how you want to
25   proceed there.

1           On the FBI redactions, I want you to meet and
2  confer and figure out what we're actually dealing with in
3  terms of the redactions and whether they are there primarily
4  to protect the identities of federal and state law
5  enforcement officers.
6           MR. IHNEN:  That's fair.
7           THE COURT:  Great.
8           So I will have you guys file a JSR in 60 days.  I
9  will order one just so we have a deadline on the docket, but
10 you can file one whenever you are able to do that.
11          MS. STRATTON:  Thank you.
12          THE COURT:  Okay.  Anything else?
13          MR. IHNEN:  No.
14          THE COURT:  Great.  Thank you, both.
15          (Whereupon, the proceeding concludes, 10:51 a.m.)

16                         **CERTIFICATE**

17          I, ELIZABETH DAVILA, RPR, FCRR, do hereby certify
   that the foregoing constitutes a true and accurate
18 transcript of my stenographic notes, and is a full, true,
   and complete transcript of the proceedings to the best of my
19 ability.

20          This certificate shall be considered null and void
   if the transcript is disassembled and/or photocopied in any
21 manner by any party without authorization of the signatory
   below.
22
        Dated this 20th day of May, 2025.
23
        /s/ Elizabeth Davila, RPR, FCRR
24      Official Court Reporter

25